# United States Court of Appeals for the Federal Circuit

2008-1479, -1517

VITA-MIX CORPORATION,

Plaintiff-Appellant,

v.

BASIC HOLDING, INC. (formerly known as Back to Basics Products, Inc.),
FOCUS PRODUCTS GROUP, LLC, FOCUS ELECTRICS, LLC,
and WEST BEND HOUSEWARES, LLC,

Defendants-Cross Appellants.

David T. Movius, McDonald Hopkins Co., LPA, of Cleveland, Ohio, argued for plaintiff-appellant. With him on the brief were Michael L. Snyder and David B. Cupar.

Larry R. Laycock, Workman Nydegger, of Salt Lake City, Utah, argued for defendants-cross appellants. With him on the brief were David R. Wright, David R. Todd, Robert E. Aycock and Clinton E. Duke.

Appealed from: United States District Court for the Northern District of Ohio

Judge Patricia A. Gaughan

# United States Court of Appeals for the Federal Circuit

2008-1479, -1517

VITA-MIX CORPORATION,

Plaintiff-Appellant,

v.

BASIC HOLDING, INC. (formerly known as Back to Basics Products, Inc.),
FOCUS PRODUCTS GROUP, LLC, FOCUS ELECTRICS, LLC,
and WEST BEND HOUSEWARES, LLC,

Defendants-Cross Appellants.

Appeals from the United States District Court for the Northern District of Ohio in case no. 1:06-CV-2622, Judge Patricia A. Gaughan.

_____

DECIDED: September 16, 2009

_____

Before BRYSON, GAJARSA, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> PROST. Opinion concurring-in-part and dissenting-in-part filed by <u>Circuit Judge</u> BRYSON.

PROST, <u>Circuit Judge</u>.

This case involves alleged infringement by Basic Holding ("Basic") of a patent and alleged trademark held by Vita-Mix Corporation ("Vita-Mix"). The United States District Court for the Northern District of Ohio granted summary judgment of no direct infringement, no inducement of infringement, no contributory infringement, and no trademark infringement in favor of Basic. The court also granted summary judgment of no invalidity based on anticipation, obviousness, or lack of enablement, no inequitable conduct, and no laches in favor of Vita-Mix. For the reasons set forth below, we vacate

and remand the district court's judgment of no direct infringement. We affirm the judgments of no inducement, no contributory infringement, and no trademark infringement. We vacate and remand the judgments of no invalidity for anticipation, obviousness, or lack of enablement. We affirm the judgments of no inequitable conduct and no laches.

I

A

The patent at issue in this appeal is directed to a method of preventing the formation of an air pocket around the moving blades of a consumer food blender. The method involves inserting a plunger into the body of the blender. The object of the plunger is to block the air channel that creates the air pocket when ingredients are blended. The sole claim of the asserted patent, U.S. Patent No. 5,302,021 ("the '021 patent") recites:

> 1. A method of preventing the formation of an air pocket around rotating blades positioned in a pitcher of a blender, the air pocket being created from an air channel of a cross-sectional size defined by a member associated with the blades, comprising the steps of supplying a fluid into the pitcher, and positioning a plunger, having a cross-sectional size approximating the cross-sectional size of the member, adjacent to and above the rotating blades while maintaining the plunger free of contact with the pitcher thereby preventing the formation of an air pocket in the fluid around the rotating blades.

During prosecution, the applicant explained that the claimed method differed from the prior art due to its preventative capability. Prior art methods of combating air pockets involved stirring the contents of the blender to break up or dislodge the pockets after they have begun to form. Stirring is only a temporary solution, however, and air pockets begin to reform as soon as the stirring stops. The applicant stated that the

claimed method prevents air pockets from ever forming by blocking the air channel that creates the air pockets, due to the plunger's size and position within the blender.

Vita-Mix markets one embodiment of its blender and plunger device as the VITA-MIX® 5000, which is the product relevant to Vita-Mix's trademark infringement claims. Other Vita-Mix blenders include the VITA-MIX® 3600, 4500, and 5200. According to the record before the district court, and the representations of Vita-Mix counsel during oral argument before this court, the numerical designations roughly correspond to the different wattages of the blenders. Vita-Mix markets its products as high-speed liquid food blenders, with emphasis on the plunger device.

Basic markets several accused blenders, including the Smoothie Elite™, the Smoothie Plus™, and the Blender Solutions™ 5000. Basic also sells other products under the Blender Solutions™ name, including the Blender Solutions™ 4000 and 5500. Each of Basic's accused blenders includes a "stir stick," which resembles the plunger from Vita-Mix's patented method. The lids of Basic's blenders have an opening which can be covered with a flat cap, or can receive the stir stick. The proximal end of the stir stick forms a ball and handle. The ball is seated on the lid opening in a ball-and-socket configuration. This configuration allows a user to grip the handle and move the distal end of the stir stick around within the pitcher of the blender. A rubber o-ring mounted on the distal end of the stir stick prevents the stir stick from scratching the inner sides of the pitcher during stirring. The sides of the pitcher also include a vertical ribbing that is interrupted at the points where the o-ring may contact the sides during stirring.

B

The '021 patent issued in 1994. Basic launched its line of blenders around

March of 2001.  In October of 2006, Vita-Mix filed suit against Back to Basics, Inc., now Basic Holdings, its parent company Focus Products, and two other subsidiaries of Focus Products; Focus Electrics and West Bend.  Vita-Mix alleged infringement of the '021 patent by dozens of Basic's blender models, and trademark infringement by the Blender Solutions™ 5000 model.  Basic responded by filing declaratory judgment counterclaims of noninfringement, invalidity, inequitable conduct, and several affirmative defenses.

The district court conducted a Markman hearing to construe several disputed claim terms.  During the hearing, the court examined the prosecution history and determined that the patentee expressly disclaimed any stirring operation that breaks up or dislodges air pockets after they have begun to form, and limited the scope of the claimed invention to positioning the plunger such that it prevents air pockets from forming.  The court construed claim 1 to exclude "stirring to disperse, dislodge, or break-up an air pocket after it has begun to form."  The court also construed the term "plunger" as a "device that can be inserted into a blender."  Basic does not dispute that its stir stick is a plunger as that term was construed by the district court.

At the close of discovery in the trial phase following the Markman hearing, both parties filed multiple dispositive motions.  These included summary judgment motions and cross-motions on issues of end user infringement of the patented method, inducement of infringement for Basic's product instructions, contributory infringement for Basic's products, common law trademark infringement for Basic's use of the designation "5000," invalidity of the '021 patent for anticipation and obviousness in light of the cited prior art, lack of enablement due to the patented method's alleged inability to prevent air

pockets, unenforceability for inequitable conduct in making false statements to the patent examiner, and laches for delaying five and a half years before bringing suit.

On July 2, 2008, the district court entered a final order granting Basic's summary judgment motions of no direct infringement, no inducement, no contributory infringement, and no trademark infringement. The court granted Vita-Mix's summary judgment motions of no invalidity for anticipation, obviousness, or lack of enablement. The court also granted Vita-Mix's summary judgment motions of no inequitable conduct and no laches. The district court also ruled on several motions not on appeal before this court, thereby resolving on summary judgment the entire dispute between the parties.

On July 16, 2008, Vita-Mix timely filed a notice of appeal on the issues of no infringement, no inducement of infringement, and no contributory infringement of the '021 patent, and no trademark infringement of Vita-Mix's use of the designation "5000." On August 1, 2008, Basic timely filed its notice of conditional cross-appeal on the issues of no invalidity for anticipation, obviousness, and lack of enablement, and unenforceability for inequitable conduct and laches. This court has appellate jurisdiction over the appeal and cross-appeal pursuant to 28 U.S.C. § 1295(a)(1).

II

The appeal and cross-appeal challenge the district court's resolution on summary judgment of various contested issues. Summary judgment is appropriate when no genuine of issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). The burden of showing the absence of a genuine issue of material fact rests with

the moving party.  Id.  A fact is material if its resolution will affect the outcome of the case.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the non-moving party.  See id. at 255.  To defeat summary judgment, the evidence as properly construed must be sufficient for a reasonable jury to find for the nonmoving party; a mere scintilla of evidence will not suffice.  Id. at 252.  We review a grant of summary judgment de novo, reapplying the standard that the district court employed.  Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1301 (Fed. Cir. 1999).

As discussed below, numerous issues are raised by Vita-Mix on appeal.  These issues include direct and indirect patent infringement, and trademark infringement.  We address each in turn.

## A.  Claim Construction

Although the district court's claim construction was not actually appealed, Vita-Mix contends that the district court erred in finding no direct infringement based, in part, on applying to the accused device a claim construction inconsistent with its claim construction order.  Direct infringement by Basic's customers also serves as a basis for Vita-Mix's claims of inducement and contributory infringement.  We must therefore decide whether the district court applied an inconsistent claim construction, and if so, which claim construction should have been applied.

At the Markman hearing, the district court reviewed the prosecution history of the '021 patent and found that the patentee distinguished its invention over prior art stirring actions that break up or dislodge air pockets after they have formed.  In light of this characterization, the court found that the preamble of the claim, "a method of preventing

the formation of an air pocket around the rotating blades positioned in a pitcher of a blender" was necessary to give life, meaning and vitality to the body of the claim. See, e.g., MBO Labs., Inc. v. Becton Dickson & Co., 474 F.3d 1323, 1330 (Fed. Cir. 2007); In re Cruciferous Sprout Litig., 301 F.3d 1343, 1347 (Fed. Cir. 2007). The court found that the prosecution history statements distinguishing the function of the plunger constituted an express disclaimer of other functions. The court construed the preamble to include the limitation, "but not including a method of stirring to disperse, dislodge, or break-up an air pocket after it has begun to form."

Vita-Mix's '021 patent originally included apparatus claims to its blender and plunger device. These claims were rejected for anticipation and obviousness. The prior art disclosed blenders with structurally similar stirring wands that were used to break up or dislodge air pockets. The applicant attempted to distinguish the claimed device by emphasizing the novel function of preventing air pockets, as opposed to dealing with air pockets that have already formed. The examiner found that this functional limitation did not overcome the anticipation and obviousness rejections of the apparatus claims, where substantially similar structure was disclosed in the prior art. The method claim, however, did overcome the rejection by the addition of novel functional limitations. The district court interpreted this exchange in the prosecution history to indicate that the examiner understood the invention's preventative function to be a new use of an existing structure. The district court thus construed "preventing" to exclude methods that eliminate an air pocket at any time after it has begun to form.

In its cross-motion for summary judgment of no infringement, Basic argued that its accused line of smoothie makers did not infringe because the stir stick was used to

stir the contents of the blender, and the patentee disclaimed stirring. In its response, Vita-Mix argued that it was irrelevant to the infringement analysis whether Basic's stir stick was used to stir the ingredients in the blender. Vita-Mix's infringement theory was that it was the positioning of the stir stick, and not the stirring action, that prevented air pockets from forming. Vita-Mix contended that since the express disclaimer was limited to stirring for a particular purpose—breaking up or dislodging air pockets after they begin to form—Basic could not avoid infringement by just any stirring operation.

In its order granting summary judgment of no infringement, the court held that Vita-Mix's position was "untenable" and that the patentee disclaimed "all stirring." Vita-Mix argues on appeal that the exclusion of all stirring was a new construction, and represents a change in the district court's position. Vita-Mix argues that the original claim construction order correctly construed the term "preventing the formation of an air pocket" to exclude breaking up or dislodging already formed air pockets, and not to exclude stirring for other reasons. Vita-Mix points out that the district court even noted that the '021 patent specification disclosed that the plunger could also be used to stir the ingredients of the blender. Vita-Mix Corp. v. Basic Holdings, Inc., No. 1:06-cv-2622 (N.D. Ohio Sept. 10, 2007) (Claim Construction Order at 7).

Claim construction is an issue of law. Markman v. Westview Instruments, 517 U.S. 370 (1996). Claims are properly construed without the objective of capturing or excluding the accused device. NeoMagic Corp. v. Trident Microsystems, Inc., 287 F.3d 1062, 1074 (Fed. Cir. 2002); SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc). A patentee may, through a clear and unmistakable disavowal in the prosecution history, surrender certain claim scope to which he would

otherwise have an exclusive right by virtue of the claim language.  See, e.g., Purdue Pharma L.P. v. Endo Pharms. Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006) ("Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution.").

We agree with Vita-Mix that the district court's finding that the patentee disclaimed all stirring appears to be inconsistent with its earlier claim construction.  We further agree with Vita-Mix that the earlier claim construction is correct for all the reasons articulated by the district court in its claim construction order.  To find that the patentee disclaimed all stirring, regardless of whether and how the stirring acts on air pockets, ignores the nature of the distinction between a positioning that prevents air pockets from forming and an operation that breaks up air pockets after they have begun to form.

We will address below what, if any, impact the district court's apparent change in claim construction had on its grant of summary judgment on the various issues raised.

### B.  Direct Infringement

The district court found, and the parties do not challenge on appeal, that it is undisputed that the accused blenders can be used in either an infringing or non-infringing manner.  Vita-Mix Corp. v. Basic Holdings, Inc., No. 1:06-cv-2622 (N.D. Ohio July 2, 2008) (Summary Judgment Order at 18).  The district court then focused its attention on the question of whether or not any infringing use actually occurred.

Vita-Mix presented two experts to testify on the issue of infringement.  The first expert, Dr. Swanger, testified that in his opinion the accused device necessarily infringes when the stir stick is inserted into the pitcher but not actively stirred.  Basic

presented its own expert to dispute these contentions. Vita-Mix used Dr. Swanger's testimony to support its allegations of direct infringement against Basic, and its allegations of inducement and contributory infringement based on direct infringement by Basic's customers.

Vita Mix's allegations of direct infringement by Basic concern two specific incidents involving Basic employees Dale Oldroyd and Tom Daniels. Vita Mix alleges that Mr. Oldroyd infringed the asserted patent during his in-house testing of Basic's blenders. Mr. Oldroyd testified that when he tested more than one blender at a time, he would allow some blenders to run with stir sticks inserted, but would not be able to stir all of the blenders simultaneously. Vita Mix contends that Mr. Oldroyd infringed the patent when he allowed some of his testing blenders to run without stirring the stir sticks.

Vita-Mix also alleges that Basic's spokesman Mr. Daniels infringed the patent when he demonstrated Basic's smoothie maker on a QVC television program. Footage of the demonstration shows a twenty-six second period where one of the accused blenders is allowed to run with the stir stick inserted, but where Mr. Daniels does not stir the stir stick. Vita-Mix contends that Mr. Daniels infringed the asserted patent during these twenty-six seconds.

The district court determined that Mr. Oldroyd could not be shown to infringe the patent, because Mr. Oldroyd did not testify as to how he positioned the stir stick. The court concluded that there was no evidence that he positioned the stir stick as claimed or that the stir sticks prevented air pockets from forming during Mr. Oldroyd's testing. The court also concluded that Mr. Daniels could not be shown to infringe because there

was no evidence in the record as to whether an air pocket actually formed during the twenty-six seconds of Mr. Daniel's allegedly infringing use of the accused blender.

Vita-Mix's second expert, Dr. Traylor, conducted a double-blind survey of blender users, and testified that during his survey he observed a certain percentage of users insert the stir stick into the pitcher but not stir it. Vita-Mix offered this testimony as evidence that some of Basic's customers use the accused products in an infringing manner. The district court struck the Traylor report as irrelevant because Dr. Traylor only testified as to whether and how the survey participants used the stir stick. He did not observe whether or not an air pocket formed in any particular instance. Because he was not informed as to the patent at issue or the positions of the parties, he had no opinion as to whether any of the disputed claim limitations were performed during his survey. The district court concluded that his testimony did not establish whether any infringing act actually occurred and was therefore not relevant to the issue of direct infringement on the part of Basic's customers. The court then found that the only remaining piece of evidence, Dr. Swanger's testimony, was not enough on which to base an underlying direct infringement claim supporting secondary liability because it was "hypothetical" in nature.

Having disposed of the two allegations of direct infringement by Basic, and the allegation of direct infringement by Basic's customers, the court concluded that there was no evidence of infringement, and granted Basic's summary judgment motion for no infringement. The court's conclusion of no direct infringement also served as a basis for granting summary judgment of no contributory infringement and no inducement, which we address in sections I.C. and I.D. below.

We find that the district court erred as a matter of law in disposing of the direct infringement claims by requiring direct evidence of infringement. The court discounted the accusations against Mr. Oldroyd and Mr. Daniels because there was no testimony or footage showing actual infringement in those cases. Such evidence, however, is not required. Direct infringement can be proven by circumstantial evidence. Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1272 (Fed. Cir. 1986). Dr. Swanger's testimony, accepted as true for summary judgment purposes, establishes that the accused blenders will necessarily infringe under certain circumstances. Mr. Oldroyd's testimony and the footage to Mr. Daniels's demonstration evidence the occurrence of those circumstances described by Dr. Swanger.

We also find that the district court erred as a matter of law in striking the testimony of Dr. Traylor and thereby disposing of Vita-Mix's allegations of direct infringement by Basic's customers. Dr. Traylor's testimony need not establish the ultimate question of infringement to be relevant. See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 591 (1993) (holding that evidence is relevant if it may assist the trier of fact in resolving a factual dispute); Moleculon, 793 F.2d at 1272. Dr. Traylor's testimony is relevant to the question of whether users tend to insert the stir stick into the pitcher without stirring. See Fed. R. Evid. 402 (evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence). Dr. Swanger testified that if the stir stick was inserted into the pitcher without stirring while the blender was on, then the accused device would necessarily infringe. Dr. Traylor presented the results of a survey indicating that Dr. Swanger's proffered conditions

were present at least a small percentage of the time. It is not too great an analytical leap for the jury to consider both experts' testimonies and conclude that infringement actually occurs in at least a small percentage of customer use. The limitations of Dr. Traylor's survey may impact the persuasiveness of his testimony, but they do not render the results of the survey wholly inadmissible.

We find that the combination of Mr. Oldroyd's testimony and Mr. Daniels's testimony with Dr. Swanger's testimony is circumstantial evidence that creates genuine issues of material fact regarding whether employees of Basic engaged in acts of direct infringement. We also find that the combination of Dr. Traylor's and Dr. Swanger's testimonies is circumstantial evidence that creates genuine issues of material fact regarding whether and when the accused device performs the infringing method. Accordingly, we vacate the grant of summary judgment of no infringement. We remand the question of direct infringement to the district court for a trial on the merits with instruction to apply the correct claim construction as discussed in Part I.A. above.

## C. Contributory Infringement

In order to reach the question of contributory infringement, we will adopt arguendo the opinion of Vita-Mix's expert Dr. Swanger and assume that customer use of the accused device directly infringes unless the stir stick is being used to break up air pockets or is in contact with the sides of the pitcher. See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 341 (1961) (ruling that a defendant can be held liable for contributory infringement if its customers directly infringe).

The patent laws provide that whoever sells an apparatus for use in practicing a patented method, knowing it to be "especially made or especially adapted for use in an

infringement of such patent, and <u>not</u> a staple article or commodity of commerce <u>suitable for substantial non-infringing use</u>, shall be liable as a contributory infringer."  35 U.S.C. § 271(c) (emphases added).  Contributory infringement imposes liability on one who embodies in a non-staple device the heart of a patented process and supplies the device to others to complete the process and appropriate the benefit of the patented invention.  <u>See</u> <u>Ricoh Co. v. Quanta Computer, Inc.</u>, 550 F.3d 1325, 1337 (Fed. Cir. 2008).

District courts have found, and we agree, that non-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.  <u>Cf.</u> <u>Hilgraeve Corp. v. Symantec Corp.</u>, 265 F.3d 1336, 1343 (Fed. Cir. 2001) (finding inducement where the accused device was capable of non-infringing modes of operation in unusual circumstances); <u>D.O.C.C. Inc. v. Spintech Inc.</u>, 36 USPQ2d 1145, 1155 (S.D.N.Y. 1994) ("Contributory infringement liability is not meant for situations where non-infringing uses are common as opposed to farfetched, illusory, impractical or merely experimental."); <u>Haworth Inc. v. Herman Miller Inc.</u>, 37 USPQ2d 1080, 1089 (W.D. Mich. 1994) ("The focus is not the utility or ubiquity of the infringing configuration; the focus is the utility, presence, and efficiency of the non-infringing configurations.").

Since the accused devices are undisputedly capable of non-infringing use, the question of contributory infringement turns on whether the non-infringing use is substantial.  Vita-Mix did not argue below, and the district court did not directly address, the substantiality of the accused blenders' non-infringing uses.  Vita-Mix focused only on the frequency of infringing use, as documented in the survey evidence of Dr. Traylor,

which does not speak to the substantiality of the non-infringing use in this case. On appeal, Vita-Mix argues that stirring the stir stick in a non-infringing manner or not inserting the stir stick are insubstantial uses, because those uses are based solely on "additional features" of the device. We held in Ricoh that an infringer does not evade liability by bundling an infringing device with separate and distinct components that are capable of noninfringing use. See Ricoh, 550 F.3d at 1337. Although Basic points out that Vita-Mix has waived this argument, we will consider it properly raised for purposes of deciding the question of contributory infringement.

Vita-Mix's argument is correct with respect to the clear cap included with the accused blenders. This cap is an additional feature, and Basic cannot escape liability by simply including the cap with an otherwise infringing blender. See id. We will therefore confine our analysis only to use of the accused blender with the stir stick. Vita-Mix's reliance on Ricoh is unavailing, however, with respect to the use of the stir stick to stir. The accused blenders' ball and socket joint, interrupted ribbing, and rubber o-ring are not merely additional, separable features of the device. Cf. id. at 1337-38 (finding that a microcontroller with no use but to infringe the patent did not escape infringement when it was imbedded in a larger product that had a non-infringing use unrelated to the microcontroller). The undisputed record shows that these features are defining features of the device, are directly related to the use of the stir stick, and are useful only if the stir stick is used to stir the contents of the pitcher and push the ingredients into the blades.

Accordingly, in light of the evidence of record with all reasonable inferences drawn in Vita-Mix's favor, no reasonable jury could find that using the stir stick to stir—

where the stirring operation breaks up air pockets or touches the side of the pitcher—is an insubstantial use of the accused device.[1] The existence of substantial non-infringing uses for the accused blenders defeats Vita-Mix's claim for contributory infringement as a matter of law. See 35 U.S.C. § 271(c). We therefore affirm the district court's grant of summary judgment of no contributory infringement.

## D. Inducement

Reaching the question of inducement also requires adopting arguendo the opinion of Vita-Mix's expert Dr. Swanger and assuming that customer use of the accused device infringes unless it is being used to break up air pockets or is in contact with the sides of the pitcher. See C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc., 911 F.2d 670, 673 (Fed. Cir. 1990) (ruling that a defendant can be held liable for inducement of infringement if its customers directly infringe).

Patent law provides that whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b). Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent. DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part).

---

[1] The dissent suggests that such non-infringing uses of the stir stick are not substantial because a user would only rarely use the device in a "solely" non-infringing way. Even assuming that the device might inadvertently infringe the patent for a brief time in the majority of uses does not mean that the non-infringing use of the stir stick to stir is not substantial enough to avoid contributory liability. The analysis would be different if the blender could not be operated in a non-infringing way unless the user infringed at some point. But where, as here, there is a common use that neither infringes nor requires infringement, the substantiality of that use is unaffected by any unrelated infringing operations.

Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice.  Id. at 1305-06.

Vita-Mix establishes that Basic knew of the patent, and argues that Basic knew of its products' potentially infringing use, but goes no further.  Indeed, the record is devoid of actual evidence establishing specific intent to encourage customers to infringe the '021 patent.  Vita-Mix instead points to the product instructions and the design of the device to support an inference of intent.

With respect to the product instructions, Vita-Mix argues that the directions for operating Basic's blender teach an infringing use of the product, giving rise to an inference of intent to induce infringement.  There are two sets of instructions relevant to this point.  The original product instructions teach stirring in a counterclockwise motion while the blades are moving.  After Vita-Mix articulated its infringement contentions, but before the filing of suit, Basic amended its instructions to teach stirring in a counterclockwise motion while scraping the sides of the pitcher with the stir stick while the blades are moving.  The original product instructions do not evidence a specific intent to encourage infringement, since they teach a stirring action which Basic could have reasonably believed was non-infringing.  The amended product instructions teach an undisputedly non-infringing use, evidencing intent to discourage infringement.  Thus, Basic's product instructions provide no basis on which Vita-Mix can rely to infer specific intent to encourage infringement.[2]

---

[2]    The dissent suggests that Vita-Mix introduced enough evidence to show that following Basic's product instructions may lead to infringing uses of the device.  The question is not, however, whether a user following the instructions may end up using the device in an infringing way.  Rather, it is whether Basic's instructions teach an infringing use of the device such that we are willing to infer from those instructions an affirmative

Vita-Mix also points to the device itself to support an inference of intent, arguing that the "default" vertical position of the stir stick leads to infringing use. This argument is insufficient as a matter of law. "Especially where a product has substantial non-infringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent." Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1365 (Fed. Cir. 2003). As discussed in Part I.C. above, Basic's blenders are capable of substantial non-infringing use.

Although the "default" vertical position of the stir stick may lead to infringing use under certain conditions, there is no evidence that Basic intends users to maintain the stir stick in this position. It is undisputedly possible to use the accused device as directed without ever practicing the claimed method. Additionally, the product design naturally encourages non-infringing use. The ball and socket joint facilitates stirring with a full range of motion, the interrupted ribbing encourages continuous contact between the stir stick and the sides of the pitcher, and the rubber o-ring encourages contact between the stir stick and the sides of the pitcher. Finally, pictures of the device in the product instructions, packaging, catalogues, and Basic's own patent show the stir stick touching the sides of the pitcher.

In sum, the record is devoid of direct or circumstantial evidence that Basic intends to encourage infringement by its customers, and replete with evidence to the contrary. We therefore affirm the district court's summary judgment of no inducement.

intent to infringe the patent. The district court correctly found that Basic's directions do not even disputably indicate such intent.

E. Trademark Infringement

Vita-Mix has a federal trademark registration for the mark VITA-MIX®. Vita-Mix has not registered the mark "Vita-Mix 5000," or the number "5000" itself. Although it has never marked the number "5000™" in commerce, Vita-Mix claims common law trademark protection for the number 5000. We review non-patent claims, such as claims arising under the Lanham Act, in accordance with the law of the regional circuit within which the case arose. See Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999). Sixth Circuit law governs our review here.

In the Sixth Circuit, a registrant must meet two criteria to succeed in a trademark infringement case: (1) the plaintiff must possess a protectable mark, Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 502 F.3d 504, 512-13 (6th Cir. 2007), and (2) the plaintiff must show a likelihood of confusion, Tumblebus Inc. v. Cranmer, 399 F.3d 754, 763 (6th Cir. 2005). Where a mark is not registered, a claimant must show that it has used the mark at issue as a trademark, and that the defendant has used the accused mark as a trademark. Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods., 134 F.3d 749, 753 (6th Cir. 1998).

An unregistered mark is entitled to protection as a trademark if it is inherently distinctive or has acquired secondary meaning. Homeowners Group, Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1105 (6th Cir. 1991). A mark is inherently distinctive if its intrinsic nature serves to identify a particular source. Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F.3d 619, 635 (6th Cir. 2002). A mark is not inherently distinctive if it serves as a grade designation rather than an indication of the source of the goods. Cf. Eastman Kodak Co. v. Bell & Howell

Document Mgmt. Prods. Co., 994 F.2d 1569, 1576 (Fed. Cir. 1993); see also Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 392 (2d Cir. 1995); J.M. Huber Corp. v. Lowery Wellheads, Inc., 778 F.2d 1467, 1469 (10th Cir. 1985); In re Armco Steel Corp., 127 USPQ 135, 136 (T.T.A.B. 1960).

Vita-Mix argues that that the Sixth Circuit test for trademark infringement is not a two part test. Vita-Mix's brief asserts that it need not first prove that it holds a protectable trademark in the number 5000 if it can instead establish a likelihood of confusion. Vita-Mix's interpretation of Sixth Circuit law is incorrect. The controlling case, Rock & Roll Hall of Fame, states:

> a plaintiff must show that it has actually used the designation at issue as a trademark, and that the defendant has also used the same or a similar designation as a trademark. In other words, the plaintiff must establish a likelihood that the defendant's designation will be confused with the plaintiff's trademark, such that consumers are mistakenly led to believe that the defendant's goods are produced or sponsored by the plaintiff.

134 F.3d at 753-54 (citations omitted). Vita-Mix may be interpreting the phrase "in other words" as signaling that the likelihood of confusion test is a proxy for proving trademark use. More detailed review of the decision in Rock & Roll Hall of Fame reveals that this interpretation is incorrect. The sentence beginning with the phrase "in other words" merely clarifies that the proper foci of the likelihood of confusion test are the two competing trademarks as they are used in commerce, as opposed to the products marked or ancillary designations not used as trademarks.

Vita-Mix does not use the number 5000 in commerce other than in connection with the designation "Vita-Mix® 5000." Vita-Mix concedes that the number 5000 functions only to distinguish the blender from previous Vita-Mix products on the market, namely the Vita-Mix® 3600 and Vita-Mix® 4500, and to indicate that the 5000 was a

higher grade appliance. There is no evidence in the record that the number 5000 has any secondary meaning apart from its appearance in conjunction with the trademark Vita-Mix® within the designation "Vita-Mix® 5000." The district court correctly concluded that the trademark Vita-Mix® identifies the source of the goods, and the designation 5000 indicates the style or grade of product. No reasonable jury could find from the evidence of record that the number 5000 is inherently distinctive or has secondary meaning and is entitled to trademark protection.

Furthermore, there is no evidence of record that Basic uses the designation 5000 as a trademark in its sale of the Blender Solutions™ 5000 product. Basic's website refers to 5000 as a model number, and Basic's product packaging does not use the number 5000 in the product name. "Blender Solutions" refers to a line of products that also includes the 4000 and the 5500. Basic contends that these numbers corresponded roughly to the suggested retail prices of the products at one time, i.e. the 5000 was suggested to sell for about $50.00. Similar to Vita-Mix's numbering scheme corresponding to the wattages of the blenders, Basic's numbering scheme serves as a grade designation rather than an indication of the source of the goods.

Rather than argue that Basic uses the number 5000 as a trademark, Vita-Mix maintains that it need not show anything other than likelihood of confusion. Vita-Mix is incorrect as a matter of law. No reasonable jury could find that either Vita-Mix's or Basic's use of the number 5000 is a protectable trademark use. Without a protected trademark use, Vita-Mix cannot make a prima facie case of trademark infringement as a matter of law. The district court correctly granted summary judgment of no trademark infringement.

III

Basic filed a conditional cross-appeal challenging the district court's summary judgments of no invalidity, no inequitable conduct, and no laches. Because the issue of direct infringement was not properly resolved on summary judgment for the reasons stated in Part II.B. above and is remanded to the district court, we reach the conditional cross-appeal. We address each issue raised in turn.

A. Invalidity

Basic filed a motion for summary judgment of invalidity based on anticipation and obviousness. Basic's motion cited two of Vita-Mix's older blender models and two prior art patents, one of which was cited by the examiner and the other of which was cited within the first reference. Vita-Mix filed a competing motion for summary judgment of no invalidity based on anticipation, obviousness, or lack of enablement. The district court granted summary judgment of no invalidity for anticipation, obviousness, or lack of enablement in favor of Vita-Mix.

As a preliminary matter, the court made a point of explaining that it was reviewing the validity issues under "its own" claim construction and not Vita-Mix's proffered claim construction. While it is not entirely clear what claim construction the court refers to as its own in this explanation, it appears that the court is applying a construction that excludes all stirring. As explained in Part I.A. above, we find that a construction that excludes all stirring is inconsistent with the district court's original claim construction order. We find that the court's original claim construction order is correct, and that the validity issues, remanded for the reason explained below, should be reconsidered under the proper claim construction.

In reviewing the merits of the cross motions concerning invalidity, the court determined that Basic did not properly cite any expert testimony in its summary judgment motions based on anticipation and obviousness. The court found that without expert testimony, Basic's motion for summary judgment provided only attorney argument and no evidence of invalidity. For this reason the court granted summary judgment of no invalidity for anticipation, obviousness, or lack of enablement.

While we will not comment on whether the district court's assessment of the need for expert testimony provides a reason to <u>deny</u> <u>Basic</u>'s motion for summary judgment of <u>invalidity</u>, we find it provides <u>no</u> reason to <u>grant</u> <u>Vita-Mix</u>'s summary judgment motion of <u>no</u> invalidity. While we are sympathetic to the district court's plight in dealing with the volume of briefing submitted in connection with the parties' summary judgment motions in this case, a district court cannot rely on its assessment of one party's motion for summary judgment of invalidity when evaluating the other party's motion for summary judgment of no invalidity. It appears that the district court did so here.

Unlike Basic's motion for summary judgment of invalidity, Basic's <u>opposition</u> to Vita-Mix's motion for summary judgment of no invalidity contains numerous citations to expert testimony. In concluding that Basic cited no evidence relevant to the question of invalidity, the district court appears to have overlooked Basic's opposition memorandum. We find that Basic has raised a genuine issue of material fact with respect to the anticipation, obviousness, and lack of enablement sufficient to defeat Vita-Mix's motion for summary judgment of no invalidity. We therefore remand the validity issues to the district court for a decision on the merits with instructions to apply the proper claim construction.

### B. Inequitable Conduct

Basic asserted a counterclaim and affirmative defense that the '021 patent is unenforceable due to inequitable conduct. To prevail on summary judgment on a claim for inequitable conduct, Basic would have to present evidence of affirmative misrepresentations of material fact, failure to disclose material information, or submission of false material information, coupled with evidence of an intent to deceive. See Dayco Prods. Inc. v. Total Containment, Inc., 329 F.3d 1358, 1362 (Fed. Cir. 2003). Both intent and materiality must ultimately be proven by clear and convincing evidence. Id.

Basic's inequitable conduct charge on appeal is that an inventor of the '021 patent made a false statement in a declaration when he distinguished low-powered prior art blenders as incapable of forming air pockets around the blades. In response to a prior art rejection, inventor John Barnard submitted a declaration to the patent office that the cited prior art reference was irrelevant because it disclosed a low-powered blender. Mr. Barnard stated that such blenders did not usually form air pockets around the blades, and thus do not bear on the claimed solution to the air pocket problem in high-power blenders. Basic offers an additional prior art reference as evidence that this statement is false. In his deposition, Mr. Barnard explained that, regardless of whether the statement is actually false, he believed the statement to be true at the time that he made it. With no other evidence in the record, the district court correctly found that Basic made no genuine showing of deceptive intent.

### C. Laches

Vita-Mix filed for summary judgment on Basic's affirmative defenses, including

patent misuse, waiver, laches, estoppel, and failure to mitigate. The district court granted wholesale Vita-Mix's motion on all of the defenses listed above, "for the reasons stated in Vita-Mix's motion." Of these rulings, Basic appeals the court's judgment only with respect to its laches defense.

Application of the defense of laches is an equitable determination that is reviewed for abuse of discretion, even on summary judgment. Aukerman, 960 F.2d at 1039. To prove an affirmative defense of laches, a defendant must show that (1) the plaintiff delayed for an unreasonable and inexcusable amount of time in filing suit, and (2) that the defendant was prejudiced as a result of the delay. Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 773 (Fed. Cir. 1995). A rebuttable presumption of laches arises when a patentee has delayed more than six years after actual or constructive knowledge of the defendant's alleged infringing activity. A.C. Aukerman, Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992); 35 U.S.C. § 286.

With respect to the first laches inquiry, Basic argues that Vita-Mix's CEO was aware of Basic's accused blenders "when they first came out," and that Vita-Mix brought suit over five years after learning of the accused infringement. Such a delay does not give rise to a presumption of laches, although "[t]he length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." Aukerman, 960 F.2d at 1032.

The circumstances of the present case do not support a finding of laches. Vita-Mix's motion for summary judgment asserted that Basic presented no evidence demonstrating prejudice. In opposition, Basic asserts that it suffered economic

prejudice from the delay because it would have changed its product instructions to avoid infringement during the entire period of delay. To support this assertion, Basic notes that it did in fact promptly change its instructions when it learned of the potential infringement. However, while a change to Basic's product instructions may impact its liability for indirect infringement, no change to those instructions would affect Basic's liability for direct infringement. In light of our rulings on inducement and contributory infringement, there can be no prejudice arising from Basic's lost opportunity to change those product instructions. We therefore affirm the district court's grant of summary judgment of no laches.

## CONCLUSION

For the reasons stated above the district court's judgment of no direct infringement is vacated and remanded for a decision on the merits under the proper claim construction. The judgments of no inducement, no contributory infringement, and no trademark infringement are affirmed. The findings of no invalidity for anticipation, obviousness, or lack of enablement are vacated and remanded for a decision on the merits under a proper claim construction. The judgment of no inequitable conduct is affirmed. The judgment of no laches is affirmed.

## COSTS

Each party shall bear its own costs.

### AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

# United States Court of Appeals for the Federal Circuit

2008-1479, -1517

VITA-MIX CORPORATION,

Plaintiff-Appellant,

v.

BASIC HOLDING, INC. (formerly known as Back to Basics Products, Inc.),
FOCUS PRODUCTS GROUP, LLC, FOCUS ELECTRICS, LLC,
and WEST BEND HOUSEWARES, LLC,

Defendants-Cross Appellants.

Appeal from the United States District Court for the Northern District of Ohio
in case no. 1:06-CV-2622, Judge Patricia A. Gaughan.

BRYSON, <u>Circuit Judge</u>, concurring in part and dissenting in part.

I agree with the majority's analysis and disposition of most of the issues in this case; my disagreement is limited to the portion of the judgment that upholds the district court's summary judgment rulings on inducement of infringement and contributory infringement. In my view, Vita-Mix introduced enough evidence on those issues to overcome Basic's summary judgment motion.

1. As to inducement, the majority concludes that although there was evidence of direct infringement, Vita-Mix introduced no evidence that Basic encouraged or instructed users of its accused devices to operate them in an infringing manner. My

review of the evidence persuades me that Vita-Mix has pointed to disputed questions of material fact with respect to induced infringement.

In the portion of its opinion dealing with direct infringement, the majority agrees that Vita-Mix's evidence is sufficient to create a factual issue as to whether, when the stir stick of the accused device is in the "default" position during normal operation—i.e., when it is not being used to stir the contents of the blender—the device infringes. Under those circumstances, a finder of fact could find inducement of infringement based on instructions that direct the user to operate the device in a normal fashion. That is because the fact-finder could conclude that operating the device in the normal fashion entails operating it so that the stir stick is in the default position, even if for a short period at the outset or for intermittent periods during the use of the blender.

In his expert report, Dr. Swanger stated that in normal operation, the accused devices will practice the claimed method. He explained that during operation, "when the stir stick is inserted into the container but not held by a user, the natural, default position for the stir stick is at or near the center of the container without touching the sides." With the stir stick in that default position during operation, he explained, the accused products would infringe. Dr. Swanger then analyzed Basic's instructions for using the blenders and found that they did not direct users to avoid using the device in the default mode.

The evidence of Basic's videotaped demonstration of the operation of the accused device, which was shown on television, was to the same effect. The demonstration showed the normal operation of the device, depicting periods of time in which the operator did not use the stir stick or even touch it. During those periods, the

stir stick appeared to remain in the default position near the center of the container, not touching the sides. A fact-finder could regard that advertising demonstration as a form of instruction on the use of the device that entailed using it at least in part in an infringing manner.

The majority relies on Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348 (Fed. Cir. 2003), for the proposition that an intent to induce infringement cannot be inferred from a defendant's knowledge that some users of the product may infringe. But this case is quite different from Warner-Lambert. There, the court found no inducement because there were many uses for the accused product and because "fewer than 1 in 46 sales of that product [were] for infringing uses." Under those circumstances, the court concluded that "we are not in a position to infer or not infer intent on the part of Apotex without any direct evidence." Id. at 1365. In contrast, if we accept Vita-Mix's evidence as true, in this case nearly all users will infringe as soon as they turn on the accused blender.

The difference can be illustrated by a simple example: Suppose a manufacturer sells a device that can be made to infringe by removing a set of screws that are in place when the device is sold. In such a case, the manufacturer would not ordinarily be liable for inducing infringement unless it instructed users to remove the screws or otherwise encouraged them to do so. But if the manufacturer sold the device with the screws removed, so that the device would infringe if used in the ordinary manner in the "as-sold" configuration, the fact that the manufacturer provided screws that would enable a user to convert the device into a non-infringing form would not shield the manufacturer from liability for vicarious infringement. In such a case, the manufacturer could be found

liable for inducement even if the instruction manual taught users how to insert the screws and pointed out the advantages of using the device in that altered, noninfringing form.

Finally, at least some of Basic's instructions arguably give specific directions to use the accused device in the default manner for some purposes. To begin with, one of the instruction manuals in the record directs the user to turn on the device with the stir stick in place, to start the blending process, and to turn off the device when the blending is complete. The manual contains no intervening reference to manipulating the stir stick. Elsewhere, the instructions for making "smoothies" direct a sequence of steps, including the use of the "pulse" feature and the low and high power settings sequentially until the contents of the blender are smooth. The instructions add, "Turn the stir stick counter-clockwise for best mixing results." Even assuming that "turning" the stir stick is interpreted to mean rotating it around the inner edges of the container, the suggested departure from the default operation could be viewed as only an optional step, or one to be used from time to time during the blending process, rather than throughout the process from beginning to end. The "instruction" evidence thus seems to me sufficient to overcome summary judgment on the issue of whether the instructions evidence the intent to encourage infringement.

2. As applied to this case, a similar analysis governs the resolution of the issue of contributory infringement and the question, common to vicarious infringement generally, whether the accused device can be used for substantial noninfringing purposes. As the majority notes, this court has held that a party will not be held liable for infringement if that party provides a device that can be used for infringement but can

also be used for substantial noninfringing purposes. In this case, the evidence proffered by Vita-Mix, summarized above, would allow a fact-finder to conclude that when the accused device is used with the stir stick in place, it will frequently be used in an infringing manner and that it would be most unusual for an ordinary purchaser of the blender to use it in a manner that avoided infringement altogether.

Basic makes two arguments as to why there is no contributory infringement in this case, neither of which is persuasive. First, it points out that the accused blenders are sold not only with a stir stick, but also with a "lid cap" that can be used in place of the stir stick, and that when the blenders are used with the lid cap in place of the stir stick, they do not infringe at all. That, according to Basic, is a "substantial non-infringing use" that is sufficient to avoid liability for contributory infringement. That argument is entirely unconvincing, as the majority correctly points out.

Basic's second argument is based on the testimony of Vita-Mix's president, who answered "yes" when asked if "it's possible to use a Basics blender in a non-infringing manner." That answer, however, does not provide the "Aha!" moment that Basic seems to believe it does. In the context of this case, the question was the wrong one: What is important is not whether it is possible to use the Basic blender in a noninfringing manner, but whether it is possible (or likely) that a user could (or likely would) operate it <u>solely</u> in a noninfringing manner. There is no dispute that the stir stick can be used in a noninfringing manner, such as during the time the user is rotating the stir stick within the blender container, keeping the stir stick in contact with the container's inner walls. But that does not overcome the evidence offered by Vita-Mix that customers who use the Basic device with the stir stick inserted will infringe in a large percentage of instances

and that the device has no substantial use that does not entail at least some period of infringement.

In this regard, I disagree with the majority's comment that "the frequency of infringing use . . . does not speak to the substantiality of the non-infringing use." Vita-Mix's evidence suggests that on the facts of this case frequency is closely related to substantiality, and I agree. That is because, based on Vita-Mix's evidence, a user of the accused devices would have to take exceptional measures to avoid infringement; i.e., the user would have to rotate the stir stick continuously during the blending process without letting it rest at any point in the default position. A finder of fact could conclude that, as a practical matter, the continuous rotation process would be an infrequent mode of noninfringing use, and for that reason, an insubstantial one.

I would likewise discount the elements of the structure and packaging of the accused devices, factors on which the majority relies. The majority is correct that those features suggest using the stir stick to stir in a manner that results in contact with the sides of the container. But the features to which the majority points do not support the inference that the stirring will be continuous and that the stir stick therefore will never be left in the default position during operation. As to that issue, Vita-Mix's evidence is to the contrary.

In sum, without suggesting how any of the above factual issues might ultimately be decided, I would hold that the evidence before the trial court is sufficient to overcome Basic's motion for summary judgment on both inducement and contributory infringement.