NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**PARALLEL NETWORKS LICENSING, LLC,**
*Plaintiff-Appellant*

**v.**

**MICROSOFT CORPORATION,**
*Defendant-Appellee*

———————————

2018-1120

———————————

Appeal from the United States District Court for the District of Delaware in No. 1:13-cv-02073-KAJ-SRF, Judge Kent A. Jordan (sitting by designation).

———————————

Decided: June 28, 2019

———————————

JOEL LANCE THOLLANDER, McKool Smith, PC, Austin, TX, argued for plaintiff-appellant. Also represented by JOHN BRUCE CAMPBELL, LEAH BURATTI; DOUGLAS AARON CAWLEY, CHRISTOPHER THOR BOVENKAMP, ERIC SORENSEN HANSEN, Dallas, TX.

JUANITA ROSE BROOKS, Fish & Richardson, PC, San Diego, CA, argued for defendant-appellee. Also represented by JASON W. WOLFF, CRAIG E. COUNTRYMAN; MARTINA

TYREUS HUFNAL, NITIKA GUPTA FIORELLA, Wilmington, DE.

―――――――――

Before HUGHES, SCHALL, and STOLL, *Circuit Judges.*

HUGHES, *Circuit Judge.*

This is a patent case involving web pages. Parallel Networks Licensing, LLC sued Microsoft Corporation in the United States District Court for the District of Delaware, asserting direct and indirect infringement of claims of U.S. Patent Nos. 5,894,554 and 6,415,335. The district court granted Microsoft's motion for summary judgment of no indirect infringement; at trial the jury found no direct infringement by Microsoft. Parallel appeals, contending that the district court erred in (1) granting Microsoft's motion to exclude Parallel's customer-use survey under Rule 702 of the Federal Rules of Evidence; (2) granting Microsoft's motion for summary judgment of no indirect infringement; and (3) denying Parallel's post-verdict motion for judgment of direct infringement as a matter of law. We have jurisdiction under 28 U.S.C. § 1295(a)(1). Because we find no reversible error in the district court's orders, we affirm.

I

The '554 and '335 patents disclose systems and methods for efficiently managing dynamic web page requests from a web client.[1] '554 patent col. 2 ll. 15–31. When a web client requests a dynamic web page,[2] the server must

―――――――――

[1] The '544 and '355 patents share the same specification. Citations to the shared specification refer to the '544 patent unless otherwise noted.

[2] A dynamic web page is one that contains content that changes or updates automatically, as opposed to static web pages, which must be updated manually. '554 patent col. 1 ll. 38–55.

generate the content on-the-fly from one or more data sources. *Id*. col. 1 ll. 46–55. According to the patents, conventional web server environments were not equipped to process multiple dynamic web page requests simultaneously. *Id*. col. 2 ll. 1–12, col. 4 ll. 32–53. Prior art systems traditionally processed all requests on a single web server machine, which could "slow down significantly and become highly inefficient" when processing multiple requests at the same time. *Id*. col. 4 ll. 48–51.

To address this problem, the '554 and '335 patents disclose a "partitioned architecture" for managing dynamic web page requests, comprising a "web server" and a plurality of "page servers." *Id*. col. 4 ll. 51–53, col. 5, ll. 49–51, col. 6 ll. 20–31. The claimed methods aim to lighten the processing demands on the web server by off-loading dynamic web page requests from the web server to the page servers. *Id*. col. 6 ll. 20–31. This is accomplished by "intercepting" a request for a "dynamic [w]eb page" at the web server and routing it to one of the page servers, thereby "releasing" the web server to "concurrently process[]" other requests. *See, e.g.*, *Ex Parte* Reexam. Cert. No. 5,894,554 C1, claims 12 and 20 (as corrected by Oct. 2, 2012 Cert. of Correction). By allowing the web server and the page servers to "simultaneously process different requests," the claimed methods increase processing efficiency. '554 patent col. 6 ll. 24–27.

Claim 30 of the '335 patent, reproduced below, is representative of the asserted claims[3] for the purposes of this appeal.

---

[3] At summary judgment, Parallel asserted direct and indirect infringement of claims 12, 15, 17, 20, 27, 41, 46, 48, and 49 of the '554 patent and 30, 43, 46, 48, 66, 78, 82, 83, and 85 of the '335 patent. At trial, Parallel asserted

30. A computer-implemented method for managing a dynamic Web page generation request to a Web server, said computer-implemented method comprising the steps of:

routing a request from a Web server to a selected one of a plurality of page servers that can each process the request, said selected page server receiving said request and releasing said Web server to process other requests wherein said routing step further includes the steps of:

intercepting said request at said Web server; and

selecting said selected page server from among said plurality of page servers that can each process said request based on dynamic information maintained for each of said plurality of page servers; and

routing said request to said selected page server;

processing said request, said processing being performed by said selected page server while said Web server concurrently processes said other requests; and

dynamically generating a Web page at said selected page server in response to said request, said Web page including data dynamically retrieved from one or more data sources.

---

direct infringement of claims 20, 41, and 49 of the '554 patent and claims 43 and 78 of the '335 patent.

*Ex Parte* Reexam. Cert. No. 6,415,335 C1, claim 30 (as corrected by Sept. 11, 2012 Cert. of Correction).

## II

### A.

Parallel first argues that the district court erred in excluding its customer-use survey and related expert testimony under Rule 702 of the Federal Rules of Evidence. We review procedural questions that are not unique to patent law under the law of the regional circuit. *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1310 (Fed. Cir. 2016). The Third Circuit reviews a district court's decision to exclude evidence for abuse of discretion. *In re Zoloft Prod. Liab. Litig.*, 858 F.3d 787, 792 n.22 (3d Cir. 2017). We are not persuaded that the district court abused its discretion by excluding Parallel's survey evidence.

The district court determined that the survey failed to satisfy Rule 702 and *Daubert* because it was not adequately tied to the asserted claims. Rule 702 requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To help the trier of fact, expert testimony must adequately "fit" the factual issue for which it is proffered. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993).

Here, Parallel submitted its survey as evidence that Microsoft customers use Windows Server to directly infringe the claims. The district court reasonably found that the survey evidence would not assist the trier of fact on the issue of infringement because the survey results do not provide enough information to determine whether any respondent performed each step of the claimed methods. For example, the survey did not ask whether respondents' systems were configured to perform concurrent processing. Additionally, the survey questions contained broad

language that did not distinguish between infringing and non-infringing uses.[4]

Parallel argues that the expert testimony of Dr. Jones remedies the survey's deficiencies and that this case is analogous to *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009). We disagree.

The patent claim in *Vita-Mix* recited a method of preventing the formation of an air pocket around the blades of a blender by inserting a "plunger" into the blender without stirring. *Id.* at 1321. A customer-use survey showed that a certain percentage of customers using the accused product inserted a "stir stick" into the blender without actively stirring. *Id.* at 1325. The district court excluded the survey evidence as irrelevant because the expert who conducted the survey only testified about how survey respondents used their stir sticks and did not address air pocket formation. *Id.* In reversing the district court, we noted the testimony from a second expert, who opined that the accused device "necessarily" infringed the claimed method when a stir stick was inserted into the blender but not actively stirred. *Id.* at 1326. Because the survey addressed

---

[4]    For example, the survey asked about respondents' use of Windows Server to manage "web (e.g., HTTP) requests." But the claims address the management of "dynamic [w]eb page[s]," and the district court construed "web page" to mean "[w]eb content on the World Wide Web, displayable by a Web browser." *Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*, No. 13-cv-2073, slip op. at 1 (D. Del. Apr. 9, 2015). Parallel does not dispute the district court's finding that "web (e.g., HTTP) requests" covers "far more than just dynamic web page requests," including "requests for, among other things, static web pages, FTPs, and information on a local network." *Parallel Networks Licensing, LLC, v. Microsoft Corp.*, No. 13-cv-2073, slip op. at 5 n.3 (D. Del. Feb. 22, 2017); *see also id.* at 6.

whether respondents used their stir sticks in this manner, we determined that the survey was relevant to infringement. *Id.*

In this case, however, there is no evidence that the survey respondents used Windows Server in a manner that *necessarily* infringes the claimed methods. Dr. Jones merely opined, without explanation, that "[a]ppropriate answers to survey questions . . . provide evidence that the respondent has likely configured and is using the relevant product in an infringing manner." J.A. 8469 ¶ 231; *see also* J.A. 8470 ¶ 236 (Dr. Jones stating that the survey results provide "sufficient evidence" that Microsoft customers infringe). The district court reasonably found that this testimony does not bridge the gap between the survey results and the question of infringement.

Accordingly, we conclude that the district court properly exercised its discretion in excluding Parallel's customer-use survey and expert testimony relying on the survey.[5]

B.

Parallel next argues that the district court erred in granting summary judgment of no indirect infringement. The Third Circuit reviews a grant of summary judgment de novo, applying the same standard as the district court. *Gonzalez v. Sec'y of Dep't of Homeland Sec.,* 678 F.3d 254,

---

[5] The district court found that "[t]he lack of fit between the survey and the asserted claims is, in and of itself, sufficient to exclude the survey as unreliable and prejudicial under *Daubert*." *Parallel Networks Licensing, LLC v. Microsoft Corp.*, No. 13-cv-2073, slip op. at 8 (D. Del. Feb. 22, 2017). Because we find no error in this determination, we do not address the district court's additional findings regarding the survey's "serious methodological flaws." *See id.*

257 (3d Cir. 2012). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We conclude that Parallel failed to establish a genuine issue of material fact sufficient to preclude summary judgment of no indirect infringement.

To establish indirect infringement, a patentee must show that the defendant's actions led to direct infringement. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004). "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). At best, Parallel's evidence shows that certain Microsoft customers have configured the accused Windows Server product in a way that makes it *capable* of infringing the asserted claims. But when an accused product has non-infringing uses and the claims require more than the capacity to perform a particular function, "it is not enough to simply show that a product is capable of infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010).

Parallel asserts that the district court improperly dismissed Dr. Jones's expert opinion that Dell, Inc. used Windows Server in an infringing manner. We disagree. "[I]t is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact." *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000). While Dr. Jones *concluded* that Dell infringed some of the asserted claims,[6] he did not "set forth the factual foundation

---

[6] Claims 12, 20, 27, 41, 48, and 49 of the '554 patent and 30, 43, 78, 82, and 85 of the '335 patent.

for his opinion . . . in sufficient detail for the court to determine whether that factual foundation would support a finding of infringement." *Id.* at 1047. For example, Dr. Jones did not explain how Dell's use of Windows Server satisfies the "concurrently processes" limitation.

Because Parallel did not provide evidence of any instance in which a Microsoft customer used Windows Server to perform all the steps of the claimed methods, the district court correctly granted summary judgment of no indirect infringement.

C.

Finally, Parallel argues that the district court erred in denying its post-verdict motion for judgment of direct infringement as a matter of law. The Third Circuit reviews de novo a district court's denial of a motion for JMOL. *Graboff v. Colleran Firm*, 744 F.3d 128, 134 (3d Cir. 2014). Applying the same standard as the district court, we consider "whether, viewing the evidence in the light most favorable to sustaining the verdict, a reasonable jury could have found for the prevailing party." *Id.* (citation omitted). We conclude that the jury reasonably could have found that Microsoft's MSN and Bing services do not infringe the asserted claims because they do not satisfy the "intercepting" limitation.

During claim construction, the parties agreed that the "intercepting" limitation means "diverting the handling of [the dynamic web page] request before the request is processed by the Web server[]." *Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*, No. 13-cv-2073, slip op. at 6 (D. Del. Sept. 30, 2014). At summary judgment, the district court declined to hold that the agreed-upon construction precludes *any* handling, or processing, at the web server. The court noted that Figure 5 of the patents discloses an embodiment in which "*at least some processing takes place before the request is intercepted.*" *Parallel Networks Licensing, LLC v. Microsoft Corp.*, No. 13-cv-2073,

slip op. at 10 (D. Del. Feb. 22, 2017) (emphasis added). At trial, Microsoft argued that the accused services do not infringe the "intercepting" limitation because they involve a *substantial amount of processing* at the web server before requests are diverted. In denying Parallel's motion for JMOL, the district court determined that Microsoft's non-infringement theory was consistent with the parties' agreed-upon construction and supported by sufficient evidence.

Parallel does not challenge the sufficiency of the evidence under Microsoft's theory of non-infringement. Rather, Parallel contends that Microsoft's theory is based on an improper interpretation of the parties' agreed-upon construction. According to Parallel, the "intercepting" limitation prohibits generating the requested web page at the web server, but does not limit the amount of processing that can occur before the request is diverted. In other words, Parallel argues that the limitation only requires diverting requests before processing *is complete.* We are not persuaded that this is a reasonable interpretation of the agreed-upon construction, much less the *only* reasonable interpretation. *See Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1048–49 (Fed. Cir. 2016). Indeed, the plain language of the construction requires "diverting the *handling* of [the] request," not merely diverting the request.

We agree with the district court that, based on the plain language of the parties' agreed-upon construction, the jury could have reasonably found that the "intercepting" limitation is not satisfied where the web server performs substantial processing before diverting a request. Accordingly, the district court did not err in denying Parallel's motion for JMOL.

## III

We have considered Parallel's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the district court's orders.

**AFFIRMED**